UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARBY KAIKKONEN,<br><br>               Plaintiff,<br><br>   v.<br><br>STATE OF WASHINGTON, *et al.*,<br><br>               Defendants. | Case No. C25-5493-MLP<br><br>ORDER GRANTING MOTION TO DISMISS |

## I.    INTRODUCTION

This matter is before the Court on the Motion to Dismiss filed by Defendants the State of Washington, the Washington Office of the Superintendent of Public Instruction ("OSPI"), and Superintendent of Public Instruction Chris Reykdal in his individual capacity (collectively, "Defendants"). (Mot. (dkt. # 21).) Plaintiff Darby Kaikkonen filed an opposition (Resp. (dkt. # 23)), and Defendants filed a reply (Reply (dkt. # 24)). Having considered the parties' submissions, the governing law, and the balance of the record,[1] the Court GRANTS Defendants' Motion (dkt. # 21).

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 9.)

ORDER GRANTING MOTION TO DISMISS - 1

## II.  LEGAL STANDARD

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) may be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (citation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III.  FACTUAL BACKGROUND

From December 1, 2021, to March 19, 2025, Ms. Kaikkonen was employed as the Director of Student Information at OSPI. (Amended Complaint ("AC") (dkt. # 15), ¶ 1.1.) Since December 2019, she has served as an elected member of the Tumwater School District Board of Directors. (*Id.*, ¶¶ 1.1, 3.3.)

In January 2025, the Washington Interscholastic Athletic Association ("WIAA") proposed amendments to its handbook, which governs athletic policies for member schools, including those within the Tumwater School District. (AC, ¶ 3.4, Ex. A.) Proposed Amendments 7 and 8 sought to modify the existing policy concerning student participation in athletics related to gender identity by establishing separate "Boys/Open" and "Girls" categories. (*Id.*)

On February 27, 2025, the Tumwater School Board voted on the proposed WIAA handbook amendments via Resolution No. 09-24-25; Ms. Kaikkonen voted in favor of the resolution, which passed by a vote of 3-2. (AC, ¶ 3.4.) OSPI leadership, including Superintendent Reykdal, publicly opposed the proposed amendments. (*Id.*, ¶ 3.9.)

On March 6, 2025, OSPI placed Ms. Kaikkonen on administrative leave. (AC, ¶ 3.6.) On March 19, 2025, OSPI terminated her employment, effective immediately. (*Id.*, ¶ 3.7.) Ms. Kaikkonen alleges that OSPI provided no specific justification for either action, noting she had consistently received positive performance feedback prior to her termination. (*Id.*, ¶¶ 3.2, 3.7.)

On June 3, 2025, Ms. Kaikkonen filed a Complaint against the State of Washington, OSPI, and Superintendent Reykdal in his official capacity. (Dkt. # 1.) On July 2, 2025, Ms. Kaikkonen sought leave to amend her claims against Superintendent Reykdal to assert them against him only in his individual capacity, which the Court granted on July 3, 2025. (Dkt. ## 13, 14.)

Ms. Kaikkonen filed her Amended Complaint on July 7, 2025, asserting a claim against Superintendent Reykdal under 42 U.S.C. § 1983 for First Amendment retaliation. (AC, ¶¶ 4.1-4.5.) She also asserts supplemental common law claims against all Defendants for: (1) wrongful termination in violation of public policy; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress. (*Id.*, ¶¶ 5.1-7.3.)

## IV.   ANALYSIS

### A.   Protected Speech

The First Amendment "prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (internal quotation marks and citation omitted). To maintain a prima facie case for First Amendment retaliation, however, Ms. Kaikkonen must first establish that her activity was, in fact, constitutionally protected. *See Boquist v. Courtney*, 32 F.4th 764, 774-75 (9th Cir. 2022).

Defendants argue that Ms. Kaikkonen's vote, as an exercise of her official power, is not protected speech under the First Amendment. (Mot. at 15-18; Reply at 7-15.) The Court agrees. Ms. Kaikkonen's assertion that her vote expressed a viewpoint on a matter of public concern and is therefore protected speech is unpersuasive. (Resp. at 11-15 (citing *Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010), *Stella v. Kelley*, 63 F.3d 71 (1st Cir. 1995), and *Miller v. Town of Hull, Mass.*, 878 F.2d 523 (1st Cir. 1989)).) *Blair* concerned internal discipline, not external action by a separate employer, *see* 608 F.3d at 544-45, and *Stella* and *Miller* are non-binding, out-of-circuit decisions. *See Int'l Chem. Workers Union Council of the United Food & Commercial Workers Int'l v. NLRB*, 467 F.3d 742, 748 n.3 (9th Cir. 2006). More fundamentally, these cases are superseded by *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 125-28 (2011), which directly addressed whether a legislator's vote constitutes protected speech.

*Carrigan* established that a legislator's vote constitutes a *governmental act*, not an exercise of personal First Amendment rights. 564 U.S. at 126. Ms. Kaikkonen's attempt to confine *Carrigan* to its specific facts—a conflict-of-interest recusal rule—falls short. (Resp. at 13-15.) *Carrigan* drew a clear distinction between governmental power and individual

expression, holding that a legislator's votes are not protected speech. 564 U.S. at 128 n. 5 ("A legislator voting on a bill is not fairly analogized to one simply discussing that bill or expressing an opinion for or against it. The former is performing a governmental act as a representative of [her] constituents; only the latter is exercising personal First Amendment rights.") (internal citation omitted).

A recent Ninth Circuit holding confirms the applicability of *Carrigan's* holding here, clarifying that the exercise of a legislator's powers—even if meant for expressive purposes—is not protected by the First Amendment. *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024). Legislative power "is not personal to the legislator but belongs to the people; the legislator has no personal right to it," *Carrigan*, 564 U.S. at 126, and the First Amendment does not confer a right to "use governmental mechanics to convey a message." *Linthicum*, 94 F.4th at 893 (internal quotation marks and citation omitted).

As a member of the Tumwater School Board, Ms. Kaikkonen is a "legislator" within the meaning of *Carrigan* and *Linthicum*. *See*, *e.g.*, *Boquist*, 32 F.4th at 775-77 (noting "a publicly elected member of a local school board" is a government official with legislative authority) (discussing *Blair*, 608 F.3d at 542-45). Therefore, she has no personal right to use her official powers for expressive purposes, and her vote in favor of Resolution No. 09-24-25 was not protected expression. (AC, ¶ 3.4.) Accordingly, her vote cannot sustain a claim for First Amendment retaliation.

Ms. Kaikkonen's attempt to reframe this case as one of viewpoint discrimination also fails. (Resp. at 15 (citing *Boquist*, 32 F.4th at 780).) The Ninth Circuit has clarified that *Boquist* involved a legislator making statements, including to a reporter, rather than a "governmental act." *Linthicum*, 94 F.4th at 894. The distinction is dispositive: personal expression may warrant

First Amendment protection, but the exercise of governmental power does not. *Id.* at 893-94. The focus is therefore on Ms. Kaikkonen's capacity and the nature of her action—voting as a school board member—not on whatever viewpoint her vote might impart.[2]

### B. Qualified Immunity

Even assuming, *arguendo*, that Ms. Kaikkonen could establish a First Amendment violation based on her vote, Superintendent Reykdal is nonetheless protected by qualified immunity. Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights that a reasonable person would have known at the time of the challenged conduct. *See Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 729 (9th Cir. 2022).

To overcome qualified immunity, "[t]he contours of the right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has emphasized that "clearly established law" should not be defined at a high level of generality, *Reichle v. Howards*, 566 U.S. 658, 665 (2012); rather, "the legal principle at issue must be defined at a more specific level tied to the factual and legal context of a given case. *Riley's*, 32 F.4th at 729.

---

[2] Defendants alternatively argue that a public employee can be terminated for political reasons if they are a policymaker, a confidential employee, or if commonality of political purpose is an appropriate requirement for the effective performance of the job. (Mot. at 15 n. 16; *see Fazio v. City & Cnty. of San Francisco*, 125 F.3d 1328, 1332 (9th Cir. 1997) (citing *Branti v. Finkel*, 445 U.S. 507, 518 (1980)).) Here, Ms. Kaikkonen's responsibilities for OSPI involved "managing and reporting data for compliance with federal education policy, including work with the U.S. Department of Education and NCES." (AC, ¶ 3.12.) Although this suggests the role involved policymaking functions, at this point, the Court does not have sufficient information in the record to determine whether Ms. Kaikkonen was, in fact, a policymaker and therefore subject to partisan dismissal.

ORDER GRANTING MOTION TO DISMISS - 6

Here, viewing the record in the light most favorable to Ms. Kaikkonen, the question is whether it was clearly established in 2025 that a public employer could not terminate a public employee based on that employee's unrelated vote as a school board member. *See Riley's*, 32 F.4th at 729 n. 12. At the time of Ms. Kaikkonen's dismissal in 2025, *Carrigan* (2011) and *Linthicum* (2024) had already clearly established that a legislator's vote is a governmental act, not protected speech. This precedent provided a reasonable basis for Superintendent Reykdal to believe that acting against Ms. Kaikkonen based on her official vote was permissible. Therefore, Superintendent Reykdal is protected by qualified immunity.

### C. Leave to Amend

Ms. Kaikkonen's First Amendment retaliation claim rests entirely on the legally untenable premise that her school board vote was protected speech. (*See* AC, ¶¶ 3.4-3.8, 4.1-4.5; Resp. at 9 ("her termination was in retaliation for her expressive vote as a member of the Tumwater School Board."), 11-15 ("Kaikkonen's vote expressing a viewpoint was protected from retaliation.").) Given the controlling Supreme Court and Ninth Circuit precedent discussed above, the Court finds that no set of facts could be alleged to cure this fundamental defect in Ms. Kaikkonen's Amended Complaint. Accordingly, the Court dismisses the federal cause of action with prejudice and denies leave to amend. *See Manzarek*, 519 F.3d at 1031.

### D. Supplemental Jurisdiction

The remaining claims sound in common law and are before this Court under supplemental jurisdiction. (*See* AC, ¶¶ 2.1-2.2, 4.1-4.5 (alleging federal jurisdiction under § 1983 and supplemental jurisdiction over all other claims).) Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the common law claims and dismisses them without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss (dkt. # 21) as follows: (1) Plaintiff's § 1983 claim against Defendant Superintendent Reykdal in his individual capacity is DISMISSED with prejudice; and (2) Plaintiff's supplemental state law claims against Defendants are DISMISSED without prejudice.

Dated this <u>4th</u> day of November, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge